[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 411 
Green Tree Financial Corporation of Alabama ("Green Tree"); Oneonta Manufactured Mobile Home Outlet, Inc. ("Oneonta"); Evelyn Sills; and Allen James — defendants in an action pending in the Blount Circuit Court — appeal from the trial court's order denying their motions to compel arbitration of the plaintiffs' claims. We reverse and remand.
The plaintiffs, Gordon D. Wampler and Murlie Wampler, purchased a mobile home from Oneonta, a mobile home dealership. Sills, acting on behalf of Oneonta, negotiated the sale to the Wamplers. The parties presented their versions of the transaction through affidavits.
The Wamplers contacted Oneonta in response to a newspaper advertisement concerning a "no-money-down" purchase plan. The Wamplers say they informed Sills that they were retired and that their only income was in the form of Social Security benefits. At that point, they say, Sills showed them a sales brochure that featured a payment plan with payments of $99 per month for the first six months, $199 per month for the next six months, and regular monthly payments thereafter of approximately $253.
On that first visit to Oneonta's place of business, the Wamplers executed what they have referred to as a sales contract. That contract did not contain an arbitration clause, but it did contain a merger clause stating that the agreement being signed constituted the entire understanding between the Wamplers and Oneonta. The Wamplers claim that they signed the contract because, they say, Sills told them that "today," i.e., the day they signed, was the last day the no-money-down plan was available and promised that she could get Mr. Wampler a job with Oneonta or with another mobile-home dealer. Sills denies having made such a promise.
Several days later, the Wamplers returned to Oneonta, at Sills's request. Upon their return, they say, Sills told them she had experienced difficulty in arranging the financing for their purchase of the mobile home and that she had been unable to arrange for monthly payments in the amount of $253 as they initially had discussed. Sills's affidavit states that the plan she had shown to the Wamplers on their first visit was available only to customers who owned their own land. Because the Wamplers would be renting a lot on which to place their mobile home, she said, they were not eligible for the plan that provided for reduced payments during the first year. The Wamplers say that Sills told them that a monthly payment of $292 was the best she could arrange for them, that she again told them that "today" was the final day they could obtain a no-money-down plan, and that she "reassured" them she would help Mr. Wampler obtain a job; after Sills had told them this, they say, they executed a series of documents. Those documents included one entitled "Manufactured Home Retail Installment Contract and Security Agreement" ("the Security Agreement"). The Security Agreement was assigned to Green Tree, a mobile-home financing company. *Page 412 
The Security Agreement provides for a payment schedule of 240 payments of $292.22 each. It also contains an arbitration clause. The Wamplers' complaint states that "[s]hortly after [they] made their first $99.00 payment, Green Tree informed them that their monthly payments were $292.22." Complaint at 5. They also say they did not know the Security Agreement contained an arbitration clause. The Wamplers claim that Sills manipulated the documents in such a manner that they did not have an opportunity to review them or to ask questions as they signed them. They also say that Sills did not give them copies of the completed documents. Green Tree provided copies of the documents to the Wamplers, at their request, approximately two months later.
The Wamplers sued Green Tree, Oneonta, Sills, and James (the president of Oneonta). The original complaint alleged fraud, suppression, negligence and/or wantonness, violations of the Alabama Mini-Code (§§ 5-19-1 et seq., Ala. Code 1975), and negligent and/or wanton supervision, all of these claims arising from their purchase of the mobile home. The Wamplers amended their complaint to add as defendants Green Tree Agency, Inc., and American Family Home Insurance Company, alleging against these two defendants breach of contract, violations of the Alabama Mini-Code, breach of fiduciary duty, fraud, suppression, unjust enrichment, and conspiracy. These claims arose from the sale of insurance in conjunction with the purchase of the mobile home. The Wamplers have dismissed their claims against American Family. Although Green Tree Agency remains a defendant in the case, it is not a party to this appeal.
The Security Agreement included a paragraph entitled "ARBITRATION," calling for arbitration of all disputes (paragraph 14), and a separate paragraph entitled "WAIVER OF JURY TRIAL" (paragraph 15). Immediately above the signature line, in bold print, and with all words in capital letters, there appears the following:
 "MY SIGNATURE BELOW ACKNOWLEDGES I UNDERSTAND PARAGRAPHS 14 AND 15 ABOVE REQUIRE BINDING ARBITRATION AND WAIVE MY RIGHT TO A JURY TRIAL IF A DISPUTE ARISES UNDER THIS CONTRACT.
". . . .
 "BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT. CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."
The Wamplers each signed the Security Agreement just below the statements quoted above. James signed the Security Agreement on behalf of Oneonta, as its president.
Green Tree, Oneonta, Sills, and James moved to compel arbitration and to stay all proceedings, based on the Security Agreement executed by the Wamplers and Oneonta and later assigned to Green Tree. The trial court, after hearing oral argument and reviewing affidavits and the pertinent documents, denied the motions. Green Tree, Oneonta, Sills, and James appeal from the order denying their motions to compel arbitration.
In the trial court, the Wamplers argued (1) that their purchase of the mobile home did not have a sufficient connection with interstate commerce to make the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., applicable; (2) that the relevant agreement between the parties was the earlier of the two contracts, which contained no arbitration agreement; (3) that the Security Agreement containing the arbitration provision is a contract of adhesion; and (4) that the arbitration provision is unconscionable. The Wamplers maintained that Allstar Homes, Inc.v. Waters, 711 So.2d 924 (Ala. 1997), entitled them to a jury trial on the issue whether they were fraudulently induced to enter into the agreement containing the arbitration *Page 413 
clause. The trial court agreed; it denied arbitration, relying onAllstar.
Green Tree and the other appellants (hereinafter referred to collectively as "Green Tree") contend here on appeal (1) thatAllstar is distinguishable from this case and that Ex parteRager, 712 So.2d 333 (Ala. 1998), requires arbitration; (2) thatAllstar conflicts with Prima Paint Corp. v. Flood Conklin Mfg.Co., 388 U.S. 395 (1967), and therefore should be overruled; (3) that the plaintiffs' claim of fraudulent inducement is, as a matter of law, insufficient as a basis for denying arbitration, or that, in any event, an evidentiary hearing is necessary; (4) that the plaintiffs presented no evidence supporting their claim of unconscionability; (5) that § 5-19-6, Ala. Code 1975, does not bar the enforcement of the arbitration agreement; and (6) that the agreement admittedly signed by the Wamplers involves interstate commerce and binds them to arbitration.
The Wamplers respond by arguing (1) that Allstar governs this case; (2) that Allstar does not conflict with Prima Paint; (3) that a court should determine whether the first agreement or the second agreement controls; and (4) that the Security Agreement is one of adhesion and is unenforceable because the Wamplers were unable to obtain alternative financing and because the arbitration clause is one-sided in that it permits Green Tree to choose between arbitration and litigation while denying that choice to the Wamplers. The Wamplers do not contradict Green Tree's assertion that § 5-19-6 does not bar enforcement of the arbitration agreement, nor do they dispute the applicability of the FAA; therefore, we do not address these issues.
 I.
We first consider whether the Wamplers' attack on the enforceability of the Security Agreement containing the arbitration clause presents a question for the court or a question for the arbitrator. Since the trial court issued its order in this action denying arbitration, this Court has released several decisions dealing with the issues here presented. In InvestmentManagement Research, Inc. v. Hamilton, 727 So.2d 71 (Ala. 1999), the Court thoroughly analyzed Prima Paint and how it was affected by the subsequent decision in First Options of Chicago,Inc., v. Kaplan, 514 U.S. 938 (1995). From InvestmentManagement, we can formulate certain rules.
When deciding the threshold issue whether the court or the arbitrator decides a challenge to the enforcement of an arbitration clause entered into by the parties, the court first must satisfy itself that the terms of the arbitration clause are broad enough to permit the arbitrator to decide issues of arbitrability. However, a determination that, by the terms of the arbitration clause, the arbitrator is to decide issues of arbitrability does not end the inquiry. Where the attack is addressed to the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbitrator, resolves the issue. But, when the challenge goes to the whole contract, a contract that happens to contain an arbitration clause, the issue of enforceability of the contract, including the arbitration clause, is for the arbitrator to decide. See, also, Jones v.Merrill Lynch, Pierce, Fenner Smith, Inc., 604 So.2d 332 (Ala. 1991), relied on in Investment Management (trial court's denial of motion to compel arbitration reversed where claim of fraud in the inducement of the contract did not place in issue the making of the arbitration clauses themselves). Investment Management, 727 So.2d at 75. See, also, Old Republic Ins. Co. v. Lanier,644 So.2d 1258, 1263 (Ala. 1994).
The terms of the arbitration clause in the Security Agreement entered into by the Wamplers call for arbitration of "all disputes, claims or controversies arising from or relating to this contract or the *Page 414 
parties thereto." The arbitration clause further provides that "all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract." Compare the phrase "any controversy . . . with respect to this agreement," from the arbitration agreement in Investment Management, a case that was sent to arbitration for resolution of the claim of fraud in the inducement. 727 So.2d at 72-73. We conclude that the arbitration clause in the Security Agreement is broad enough to include an agreement to arbitrate the issue of the enforceability of the agreement containing the provision for arbitration.
We now consider whether the attack on the arbitration agreement is actually an attack on the entire Security Agreement. In order to escape the legal consequences of their having signed the Security Agreement, which contains, among other things, the arbitration provision, the Wamplers contend that they were forced to sign it because of "tremendous economic duress" arising from a combination of sales pressure concerning the impending deadline on the availability of a no-money-down payment plan and what they describe as their limited financial condition.
The Wamplers charge that Oneonta obtained their signatures on the Security Agreement through fraud. According to the Wamplers, Sills held all the documents they signed, including the Security Agreement, in one hand and attempted to explain them while she pointed to where they needed to sign. The Wamplers do not contend that Sills misrepresented anything. Instead, they claim she suppressed the material fact that the arbitration clause existed and that she never gave the Security Agreement to them so they could read it and did not allow them to ask any questions about the Security Agreement. In response, however, Sills stated in her affidavit that she never kept the Wamplers from reading the contract and that, in fact, the Wamplers had the contract spread out on the table before them in her office. She expressly denied that she kept customers from reading their contract documents. The Wamplers do not contend that Sills refused a request to examine the documents.
The Wamplers' claims alleging suppression of the arbitration clause are in reality an attack on the entire Security Agreement. Their charges relate to their execution of a new agreement containing various features, including payment terms that differed from those of the initial agreement they signed. Their contentions concerning Sills's technique for obtaining signatures of necessity allege that Sills concealed all portions of the agreement, not merely the arbitration clause.
When a plaintiff attacks an agreement on the basis that the plaintiff's assent was fraudulently induced, but does not contend that the arbitration agreement itself, apart from the other provisions of the agreement, was induced by fraud, Prima Paint
requires that the issue of fraudulent inducement be arbitrated.Investment Management, 727 So.2d at 77. Artful pleading cannot defeat the operation of this rule. Jones, 604 So.2d at 337. "`[W]e must look beyond the ad hoc arguments of counsel in order to determine whether [the plaintiff's] claim actually bears upon the entire agreement' or just the arbitration clause."NationsBanc Investments, Inc. v. Paramore, 736 So.2d 589,591 (Ala. 1999) (quoting Anniston Lincoln Mercury Dodge v.Conner, 720 So.2d 898, 901-02 (Ala. 1998)). The Wamplers' claim of suppression challenges not only the enforceability of the arbitration clause in the Security Agreement, but also the enforceability of the entire Security Agreement. So long as the arbitration clause is not shown to be otherwise unenforceable, this claim must be presented to the arbitrator. We make no finding on the merits of this claim. *Page 415 
 II.
We now consider the Wamplers' argument that the arbitration clause is unenforceable because, they say, it is unconscionable and appears in a contract of adhesion. The issue of unconscionability of an arbitration clause is a question for the court and not the arbitrator. 9 U.S.C. § 2; Ex parte Dan TuckerAuto Sales, Inc., 718 So.2d 33, 41 (Ala. 1998) (Lyons, J., concurring specially), followed in Ex parte Napier, 723 So.2d 49,52 (Ala. 1998). We are restricted to general principles of Alabama contract law when asked to declare an arbitration agreement unenforceable. Section 2 of the FAA states:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
(Emphasis added.) In other words, we cannot create new rules calculated to disfavor contracts requiring arbitration that do not otherwise apply generally to all contracts. Doctor's Associates,Inc. v. Casarotto, 517 U.S. 681 (1996) (Montana statute creating special rules for determining enforceability of arbitration contracts struck down as an unconstitutional interference with the FAA).
Unconscionability is an affirmative defense. See, e.g.,Earmon Oil Co. v. Burroughs Corp., 625 F.2d 1291 (5th Cir. 1980);Ford v. Canton, 530 So.2d 217, 219 (Ala. 1988). The party asserting an affirmative defense has the burden of proof. Earmon, 625 F.2d at 1299; Alabama Pattern Jury Instructions (Civil) 8.01 (2d ed. 1993). The party asserting unconscionability as a defense to the enforcement of an arbitration clause has the burden of proof on that issue. Napier, 723 So.2d at 53. In Napier, we suggested certain factors that parties such as the Wamplers could assert that this Court has recognized as material to a determination of unconscionability, such as "a refusal of [their] request for assistance after [they] had notified someone that [they were] unable to see or to understand; [their] inability to obtain the product made the basis of [the] action from this seller, or from another source, without having to sign an arbitration clause; the oppressiveness or unfairness of the mechanism of arbitration; or the [unfairness] of a discount or other quid pro quo in exchange for [their] accepting an arbitration agreement." Id. at 52 (footnote omitted).
In arguing unconscionability, the Wamplers first point to their limited financial condition. However, this factor of their limited financial condition is presented in the context of their lacking a choice in making the purchase of their mobile home rather than in the context of an undue burden that may be imposed upon them if they are required to perform under the terms of the arbitration agreement. The Security Agreement and the record are both completely silent as to whether the Wamplers will be required to pay all or any portion of the arbitration fees; as to the extent of hardship the Wamplers will experience if they have to pay those fees; and as to the amount of the contemplated fees and costs in this case. Where a clause in a contract is silent on a particular question, notions of fairness and settled principles of Alabama law prevent us from deciding the question by indulging an assumption that the proof would support a "worst case" scenario. Where a contract is silent, usage or custom becomes a part of the contract. East Tennessee, V. G.R.R. v. Johnston, 75 Ala. 596
(1884) (followed in Lindy Mfg. Co. v. Twentieth Century Marketing,Inc., 706 So.2d 1169, 1174 (Ala. 1997)). Compare Randolph v.Green Tree Financial *Page 416 Corp. — Alabama, 178 F.3d 1149 (11th Cir. 1999) (arbitration clause silent on subject of arbitration fees and costs and therefore unenforceable in context of claims under Truth-in-Lending Act, 15 U.S.C. § 1601).
We have previously acknowledged that the FAA, 9 U.S.C. § 2, binds us to faithfully apply general principles of Alabama contract law when considering a challenge to the validity of an arbitration agreement. Because the general principles of Alabama contract law do not excuse performance on grounds of financial hardship, we cannot allow a party's poverty, standing alone and independent of other considerations justifying a finding of unconscionability, to constitute a defense to enforcement of an arbitration agreement. Dan Tucker, 718 So.2d at 37. We are not here dealing with the effect of financial hardship on the enforcement of a federally created statutory cause of action. See, e.g., Paladino v. Avnet Computer Technologies, Inc.,134 F.3d 1054, 1062 (11th Cir. 1998) (forcing a plaintiff to bear the brunt of "hefty" arbitration costs and "steep filing fees" constitutes a legitimate basis for concluding that the arbitration clause does not comport with statutory policy). Unlike Paladino, in which competing federal policies were in play, this present case arises under common-law principles governed solely by Alabama law and involves only one federal policy, that being a policy favoring arbitration.
 "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,24-25 (1983).
The Wamplers also condemn the agreement as one-sided because it gives Green Tree the option to litigate while restricting them to arbitration. In Ex parte McNaughton, 728 So.2d 592 (Ala. 1998), this Court held that arbitration could not be denied where one of the parties to the arbitration agreement has retained the option to pursue a remedy in judicial proceedings. We did so by first pointing to the significant and impressive precedential impediments to the adoption of any rule relegating arbitration to a suspect status. Id. at 597-98. We then pointed to the fallacy in treating arbitration as a remedy, noting that it is a means to an end and not an end in itself. Id. at 598. We embraced criticism of the conclusion that one party's retaining the right to file an action in court while requiring the other party to arbitrate any claims rendered an arbitration agreement unenforceable; a view that was expressed only in dictum by two Justices in Northcom, Ltd. v. James, 694 So.2d 1329 (Ala. 1997). We quoted from Goodwin v. Ford Motor Credit Co., 970 F. Supp. 1007,1012 (M.D. Ala. 1997), where the federal court stated, "The weight of precedent and scholarship . . . generate[s] too much ballast for this doctrine to be able to lift off. . . ."McNaughton, 728 So.2d at 598. The doctrine remains on the launchpad, regardless of personal views regarding the efficacy of arbitration versus litigation in certain settings, until such time as Congress or the United States Supreme Court directs otherwise. Thus, while the agreement restricts the Wamplers to arbitration while reserving to Green Tree the option to litigate, this fact, standing alone, is not sufficient to warrant a finding of unconscionability. Ex parte Parker, 730 So.2d 168 (Ala. 1999).
The Wamplers rely on Lloyd v. Service Corp. of Alabama, Inc.,453 So.2d 735 (Ala. 1984), where, after commenting on the proliferation of standardized contracts, this Court struck down an exculpatory clause in a residential lease contract as unconscionable, on the ground that it violated public policy. As previously noted, we are not at liberty to treat arbitration agreements as inherently unfair or *Page 417 
oppressive. McNaughton, 728 So.2d at 597. See Coleman v.Prudential Bache Securities, Inc., 802 F.2d 1350,1352 (11th Cir. 1986), following Moses H. Cone, 460 U.S. at 24-25. We simply cannot declare a violation of public policy when one party is required to arbitrate while the other retains a choice.
We are left only with evidence suggesting that the Wamplers experienced a financial hardship in regard to the purchase of their mobile home. From that evidence we are left to speculate, although it is not argued, that the cost of arbitration could serve as a factor supporting a finding that the arbitration agreement is one-sided and unconscionable. As previously noted, we cannot reach this issue on a silent record. Also missing from the picture is evidence that other dealers similarly situated would insist on an arbitration clause from people such as the Wamplers. Lacking as well is an attack on the manner in which the terms of this agreement create a process of arbitration that operates unfairly as to the Wamplers. For example, we are not asked to review the method by which arbitrators would be selected. We simply cannot take judicial notice of facts of this nature. Because the Wamplers say they were not aware that the agreement included the arbitration clause, we are not called upon to consider the propriety of any discount offered in exchange for the Wamplers' accepting the agreement to arbitrate.
In May 1998, the American Arbitration Association ("the AAA") published A Due Process Protocol for Mediation and Arbitration ofConsumer Disputes. That document contains a provocative discussion of concepts of fairness in the context of the arbitration of consumer claims. The AAA has also promulgatedArbitration Rules For the Resolution of Consumer-RelatedDisputes. Those Rules, which became effective July 1, 1999, considerably lowered arbitration costs to consumers, such as filing fees. The Wamplers' arbitration agreement is not subject to the AAA rules. Hence, the AAA's rules and protocol could serve only as a standard against which to test evidence of custom and usage under the arbitration clause in the Wamplers' Security Agreement.
The Wamplers had the burden of proving that the arbitration clause in the Security Agreement was unconscionable. They did not present substantial evidence that would support a finding that it was. We, therefore, do not reach the question whether evidence of custom and usage in the arbitration of similar disputes, when coupled with the fact that the Security Agreement gave Green Tree the option to litigate while it restricted the Wamplers to arbitration, would tip the scales in favor of a finding of unconscionability.
 III.
We conclude that the trial court erred in denying the motions to compel arbitration. The order denying those motions is therefore reversed, and the cause is remanded.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, See, and Brown, JJ., concur.