IN THE SUPREME COURT OF MISSISSIPPI
NO. 2001-CA-00832-SCT

*CHARLES RUSSELL*

*v.*

*PERFORMANCE TOYOTA, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/16/2001 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PAUL NATHAN JENKINS, JR. |
| | MICHAEL DALE COOKE |
| | ROGER M. TUBBS |
| ATTORNEYS FOR APPELLEE: | WALTER ALAN DAVIS |
| | JOHN RAMSEY McCARROLL, III |
| | GEORGE E. DENT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 09/19/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/10/2002 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. After the Lee County Circuit Court referred this matter to arbitration pursuant to a contract between Charles Russell and Performance Toyota, Inc., Russell appeals to this Court contending that his claims were not subject to the arbitration clause, arbitration was improper, Performance Toyota waived its right to arbitration, the arbitration clause violates Miss. Code Ann. § 15-1-5 (1995), and the arbitration clause is unconscionable. We affirm the Lee County Circuit Court's decision to compel arbitration.

## FACTS

¶2. Russell traded in a Toyota T-100 truck to and purchased a Toyota Tacoma truck from Performance Toyota. Russell alleges that First Tennessee Bank attempted to finance the purchase, but Performance Toyota notified Russell that it refused to assign the financing to First Tennessee. Performance Toyota took possession of the Tacoma and refused to return the T-100 to Russell.

¶3. Performance Toyota alleges that, after Russell expressly represented that the T-100 had not been

wrecked, it credited Russell $10,000 toward the purchase of the Tacoma for the T-100 trade-in. Because the pay-off of the T-100 was $8,347.78, it issued a check to Russell in the amount of $1,652.22. Later, Performance Toyota discovered that the title noted that the T-100 had been "rebuilt." Performance Toyota took steps to cancel the sale and, after it successfully took possession of the Tacoma, informed Russell that he could reclaim the T-100 and demanded that Russell return the $1,652.22 which had been advanced.

¶4. Russell never took steps to reclaim the T-100 trade-in, but instead filed suit against Performance Toyota alleging wrongful repossession, conversion, fraud, and tortious interference in a business relationship. After appropriate motions were filed, the Circuit Court of Lee County compelled arbitration of the dispute.

## DISCUSSION

¶5. We conduct a de novo review for determinations of legal questions. *Gant v. Maness*, 786 So.2d 401, 403 (Miss. 2001); *Saliba v. Saliba*, 753 So. 2d 1095, 1098 (Miss. 2000). Findings of fact are given deferential treatment and are subject to the "manifest error/substantial evidence" standard.

### I. WHETHER THE FEDERAL ARBITRATION ACT APPLIES TO THIS CASE.

¶6. In *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 104, 106, 107, 108 (Miss. 1998), we recognized the applicability of arbitration for resolving disputes by stating that we

> will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution.

> \* \* \*

> Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the presumption will be indulged in favor of the validity of arbitration proceedings.

> \* \* \*

> "In enacting § 2 of the Arbitration Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress has thus mandated the enforcement of arbitration agreements." The Arbitration Act, resting on Congress's authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts. "The sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce."

> Doubts as to the availability of arbitration must be resolved in favor of arbitration. "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted."

> \* \* \*

> In addition to establishing a strong presumption in favor of arbitration, the Act also limits the role of the court to determining whether an issue is arbitrable. The court's sole function is to determine

whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute. "The courts . . . have no business weighing the merits of a particular claim, or determining whether there is particular language in the written instrument which will support the claim."

(citations omitted).

¶7. Because Performance Toyota is a Tennessee corporation with its principal place of business in Memphis, Tennessee, and Russell is an adult resident citizen of Lee County, Mississippi, we find that this matter "evidences a transaction in interstate commerce" and the FAA therefore applies to it.

## II. WHETHER THE ARBITRATION AGREEMENT APPLIES TO RUSSELL'S CLAIMS.

¶8. Russell contends that his claims "arise from the actions and the wilful and wanton disregard of [his] property rights by [Performance Toyota]," and are not, therefore, subject to the arbitration agreement.

¶9. The following provisions were conspicuously included in the Purchase Agreement:

### NOTICE TO CREDIT BUYER

If this order involves credit, this form shall constitute an agreement by Purchaser and Seller to arbitrate any disputes which arise between them and shall authorize the Seller to secure any and all information from any source to determine the credit worthiness of the purchase.

\* \* \*

### ARBITRATION AGREEMENT

Any controversy or claim arising out of or relating to the vehicle which is the subject of this contract or its acquisition by Purchaser shall be submitted to arbitration before one arbitrator in Memphis, Tennessee in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Arbitration shall be the exclusive, final and binding method of resolution of any claim or controversy between the Purchaser and Performance Toyota, Inc. and must be initiated within 180 days after the claim or controversy first arises. Failure to timely initiate arbitration shall constitute waiver of the claim or controversy.

\* \* \*

[T]he trade-in vehicle has not been rebuilt, reconditioned or salvaged, the vehicle has not suffered flood, hail or other substantial weather damage; and there is no indication of any of the foregoing or any other exception or condition noted on the vehicle's title.

¶10. In *Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 726 (Miss. 2001), Justice Mills, writing for a 6-3 Court and discussing a similar argument, found that the broad phrase "[a]ny controversy arising out of or relating to" contained in an account management agreement encompassed a claim of breach of fiduciary duty because the funds which were the subject of the breach of fiduciary duty claim "were derived directly from . . . accounts and transactions with Smith Barney." The subject Purchase Agreement contains the identical phrase "*[a]ny controversy or claim arising out of or relating to* the vehicle which is the subject

of this contract or its acquisition by Purchaser . . . ." (emphasis added).

¶11. Russell argues that his claims that Performance Toyota fraudulently obtained the original title documents from the Lee County Tax Collector's office, wrongfully repossessed the Tacoma, illegally auctioned off the T-100 and intentionally converted Russell's property should not be subject to the arbitration agreement. Russell's claims do not differ in any way from those in *Smith Barney*. All of these claims pertain to the disputed ownership of the Tacoma and the T-100, the two vehicles which are the subject of the Purchase Agreement. Given the broad language of the clause contained in the Purchase Agreement, we find that the arbitration agreement does apply to Russell's claims.

### III. WHETHER ARBITRATION WAS APPROPRIATE IN THIS MATTER.

¶12. Russell next argues that, because the "Purchaser's Agreement Concerning Trade-In" does not contain an arbitration clause, any claims that involve the trade-in agreement are not subject to arbitration.

¶13. Russell fails to note, however, that the "Purchaser's Agreement Concerning Trade-In" is specifically integrated into the "Retail Buyer's Order," which does contain an arbitration clause. The "Retail Buyer's Order" states, "The attached Purchaser's Agreement Concerning Trade-In hereby is incorporated into this contract."

¶14. This claim is without merit.

### IV. WHETHER PERFORMANCE TOYOTA WAIVED ITS RIGHT TO ARBITRATION.

¶15. Russell argues that, if the arbitration clause is valid, Performance Toyota "has waived its right to arbitration by its actions of seizing the Toyota Tacoma [Russell] purchased . . . and selling the T-100 that Performance [Toyota] claims is a 'trade-in.'" Performance Toyota "took actions on [its] own and did not arbitrate its claims . . . ." In support of his argument, Russell cites *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 911 (Miss. 1993), in which we held that a party waives arbitration if it substantially takes advantage of the judicial process, and *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999), in which the United States Court of Appeals for the Fifth Circuit held that, to establish a waiver, the objector to arbitration must establish "that a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."

¶16. A "[w]aiver of arbitration is not a favored finding, and there is a presumption against it." *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir. 1986); *see also Subway Equip.*, 169 F.3d at 326 ("[A] party alleging waiver of arbitration must carry a heavy burden.")

¶17. We note that, even though Performance Toyota took possession of the Tacoma, it never instituted legal proceedings against Russell. Under the Uniform Commercial Code (adopted in Mississippi as Miss. Code Ann. § 75-9-609 (2002)), when a debtor has defaulted, a secured party has the right to take possession of the collateral without using judicial process. The cases cited by Russell which hold that a right to arbitration was waived all involved the institution of legal proceedings *in court* and the party which invoked arbitration had filed pleadings and motions and had participated in discovery. *See, e.g., Subway Equip.*, 169 F.3d at 328; *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156 (5th Cir. 1986); *Cox*, 619 So. 2d at 914. Here, Performance Toyota's only overt act in the legal proceedings filed against it was to file a motion to compel arbitration.

¶18. Other jurisdictions addressing this issue have held that taking possession of the collateral or other similar actions do not waive a party's right to arbitration. *See, e.g., **Southwest Indus. Imp. & Exp., Inc. v. Wilmod Co.,*** 524 F.2d 468, 470 (5th Cir. 1975) (seller-mover's participation in settlement discussions and self-help measure of reselling goods in dispute did not amount to waiver of contractual right to arbitrate); ***Eagle Telecom, Inc. v. Billing Concepts Sys., Inc.***, 1999 WL 570860 *1 (E.D. Pa. 1999) (unilateral discontinuance of services under an agreement does not result in waiver of right to arbitration); ***Ex parte Dickinson,*** 711 So. 2d 984, 988 (Ala. 1998) (Dickinson's claim that the dealership should have allowed the repossessed vehicle to remain in his possession pending arbitration "confuses self-help with 'judicial process.'" "[S]elf-help is *not* 'judicial process,' and we decline to extend the rule to encompass self-help."); ***Conseco Fin. Servicing Corp. v. Wilder***, 47 S.W.3d 335, 345 (Ky. Ct. App. 2001) (Lender did not waive its right to arbitration by pursuing repossession of mobile home because repossession was not for purpose of gaining tactical advantage with respect to court proceedings.);

¶19. This claim is without merit.

## V. WHETHER THE ARBITRATION AGREEMENT VIOLATES MISS. CODE ANN. § 15-1-5.

¶20. Russell contends that the following two sentences within the arbitration agreement violate Miss. Code Ann. § 15-1-5 (1995): "[Arbitration] must be initiated within 180 days after the claim or controversy first arises. Failure to timely initiate arbitration shall constitute a waiver of the claim or controversy." Russell states that the sentences attempt to shorten the statute of limitations designated in § 15-1-5, and therefore the arbitration agreement is void.

¶21. Mississippi case law, however, holds that if a court strikes a portion of an agreement as being void, the remainder of the contract is binding. *See, e.g., **Lawler v. Government Employees Ins. Co.***, 569 So. 2d 1151, 1153 (Miss. 1990); ***Plaza Amusement Co. v. Rothenberg***, 159 Miss. 800, 131 So. 350, 357 (1930) ("If an illegal condition is annexed to a contract, it will not void the whole contract, but the illegal part will be treated as void.") (citing ***Adams v. Standard Oil Co.***, 97 Miss. 879, 53 So. 692 (1910)). Also, the Fifth Circuit has held that a limitation in an insurance policy was void under Mississippi law, but that the remainder of the policy was not affected by the void provision. ***Richards v. Allstate Ins. Co.***, 693 F.2d 502, 505 (5th Cir. 1982). Finally, the United States District Court for the Southern District of Mississippi, applying Mississippi law, specifically struck a time limitation period contained in a contract and declared that the remainder of the contract was binding. ***Smith v. Orkin Exterminating Co.***, 791 F. Supp. 1137, 1142 (S.D. Miss. 1990).

¶22. We find that, even if the limitation time period contained in the arbitration agreement were void, the arbitration agreement is still binding.

## VI. WHETHER THE ARBITRATION AGREEMENT IS UNCONSCIONABLE.

¶23. Russell complains that the arbitration agreement was "unilateral" and inequitable because he was a consumer and Performance Toyota was a corporation with a much greater bargaining position. He states that he was not in a position to negotiate the terms of the contract because there was no equal footing between the parties.

¶24. Specifically, Russell argues that the arbitration agreement was unconscionable because he had a lack

of knowledge of the contract as a whole and of the arbitration agreement in particular, there was a lack of voluntariness inasmuch as he was not in a position to negotiate or bargain with Performance Toyota, the arbitration clause was not reasonably related to the business risks of the parties, and the arbitration clause was against public policy. *See, e.g.,* **Bank of Indiana, Nat'l Ass'n v. Holyfield**, 476 F. Supp. 104, 109-10 (S.D. Miss. 1979).

¶25. Substantive unconscionability may be found when the terms of the contract are of such an oppressive character as to be unconscionable. *Id.* at 110. "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" **East Ford, Inc. v. Taylor**, 2002 WL 1584301, \*3 (Miss. 2002) (motion for rehearing pending) (quoting **York v. Georgia-Pac. Corp.**, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984)). Russell's claims of lack of knowledge and lack of voluntariness are claims of procedural unconscionability, while his claims of the arbitration clause not bearing a reasonable relationship to the business risks of the parties and being violative of public policy are claims of substantive unconscionability.

¶26. The Fifth Circuit has ruled that, where a contract which contains an arbitration agreement is attacked as being procedurally unconscionable, the attack

> is an attack on the formation of the contract generally, not an attack on the arbitration clause itself. Because [the plaintiff's] claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that her claims be heard by an arbitrator.
>
> \* \* \*
>
> While we acknowledge that [the plaintiff] specifically attacks the arbitration clause, she also contends that she signed the Agreement "[b]ased upon the Defendant's representations . . . [that the Agreement's] coverage [would] be limited to situations such as non-competition, payola, and intellectual property rights." She also attacks the agreement based upon "inequality of bargaining power." These assertions belie [the plaintiff's] contention that her attack is limited to the arbitration clause and they support our conclusion that her attack is directed at the entire agreement.

**Rojas v. TK Communications, Inc.**, 87 F.3d 745, 749, 751 n.3 (5th Cir. 1996) (citations omitted).

¶27. We find that Russell's procedural unconscionability claims (lack of knowledge and lack of voluntariness) attack the Purchase Agreement as a whole, and not just the arbitration agreement, and that the reasoning of the Fifth Circuit in referring the issue of unconscionability to the arbitrator is sound and should be followed.

¶28. However, considering the merits of Russell's claims of procedural unconscionability, there were numerous car dealerships in Tupelo and in Memphis and Russell was not by any means coerced to do business with Performance Toyota. Performance Toyota was not the sole supplier of automobiles. After Russell was presented with the Purchase Agreement, he was not coerced into signing it. He could have walked away and gone to another dealership. The arbitration agreement in the Purchase Agreement is preceded by boldface and capitalized headings and was almost immediately succeeded by the signature line.[1] In Mississippi, a person is charged with knowing the contents of any document that he executes.

***J.R. Watkins Co. v. Runnels***, 252 Miss. 87, 96, 172 So. 2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him.").

¶29. Russell claims that the arbitration clause was substantively unconscionable because it resulted in unreasonable risks and it unnecessarily shielded Performance Toyota from its own potential negligence. However, the arbitration agreement pertains to claims of either party and does not benefit Performance Toyota only. It is equally binding upon Performance Toyota and Russell. Performance Toyota will not be shielded from any negligence it may have committed. All claims, including Russell's claim that Performance Toyota was negligent, will be heard and resolved during arbitration. Finally, other than making the bald statement that the arbitration agreement "resulted in unreasonable risks," Russell has made no specific assertion how he was subjected to an unreasonable risk.

¶30. This issue is without merit.

## CONCLUSION

¶31. The Lee County Circuit Court's grant of Performance Toyota's motion to compel arbitration is affirmed.

¶32. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., COBB, AND CARLSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND GRAVES, J.**
>
> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶33. The arbitration clause is unconscionable in that it was not a negotiated term of the agreement Russell entered into with Performance Toyota. A person has to knowingly and intelligently waive their constitutional rights in order for arbitration to be compelled. *Parkerson v. Smith*, 817 So.2d 529, 535 (Miss. 2002) (plurality opinion). When a party with superior bargaining power simply inserts an arbitration clause in an adhesion contract and offers no explanation of the impact of such a clause, then the clause is unconscionable. This is what transpired in this case; and therefore, the arbitration clause is unconscionable. Accordingly, I dissent.

¶34. Persons signing a contract containing an arbitration clause should be fully advised so that they knowingly and intelligently waive their right to a trial by jury, that the arbitrators do not have to follow the procedures in a traditional legal action, that the individual has no authority to subpoena witnesses or documents or conduct discovery, that they have no control over the amount involved and settled upon, that there is no review by an appellate court, and that they have no input into whether the arbitrator is qualified, what those qualifications should be, or the percentage the arbitrator receives. The party must be informed that by signing a contract that contains an arbitration clause they waive basically any right to participate in the strategy and outcome of their dispute. The party must be informed that he or she has agreed to put their fate in the hands of an arbitrator. Here, Russell was not informed of the rights he was forfeiting by signing the contract. He did not knowingly and intelligently waive his constitutional rights. *See **id***. Short of an explanation of this magnitude, Russell should not be held to an arbitration clause such as the one in this case.

¶35. Accordingly, I find the arbitration clause unconscionable; and therefore, I dissent to the majority's affirming the decision to compel arbitration.

**DIAZ, J., JOINS THIS OPINION.**

**DIAZ, JUSTICE, DISSENTING:**

¶36. Though I agree that in some commercial situations arbitration should be allowed as demonstrated in *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 103 (Miss. 1998), arbitration clauses in most consumer contracts involve overreaching and unconscionability and extinguish the constitutionally guaranteed remedy of trial by jury. In the case at bar, Performance Toyota's standard-form arbitration agreement contains elements of both procedural and substantive unconscionability that, in previous cases, have led this Court to refuse to give similar clauses binding effect. *See East Ford*, *Inc. v. Taylor*, 2002 WL 1584301 (Miss. 2002) (motion for rehearing pending); *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202 (Miss. 1998); *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So. 2d 537 (1948). *See also* **Bank of Indiana, Nat'l Ass'n v. Holyfield**, 476 F. Supp. 104, 109 (S.D. Miss. 1979) . Because I believe that Performance Toyota's superior bargaining power combined with Russell's lack of knowledge and meaningful choice renders the arbitration agreement unconscionable, and because I do not believe that Russell's constitutionally guaranteed rights will be adequately protected through this arbitration proceeding, I respectfully dissent.

¶37. This Court has examined unconscionability:

> Unconscionability has been defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." To show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business. ***Bank of Indiana, Nat'l Ass'n v. Holyfield***, 476 F.Supp. 104, 109 (S.D. Miss. 1979) (citations omitted). "In ***Terre Haute Cooperage v. Branscome***, 203 Miss. 493, 35 So. 2d 537 (1948), this court defined an unconscionable contract as '. . . one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other . . .'" ***In re Will of Johnson***, 351 So. 2d 1339, 1341 (Miss. 1977).

*Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d at 1207.

¶38. The courts have recognized two types of unconsicionability: procedural and substantive. Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." ***Pridgen v. Green Tree Fin. Servicing Corp.***, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000) (quoting ***York v. Georgia-Pac. Corp.***, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984)). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F. Supp. at 1278. Procedural unconscionability goes to the making of the agreement; substantive unconscionability goes to the terms.

¶39. In the case sub judice, Russell argues that the arbitration agreement was unconscionable because (1) he lacked knowledge of the contract as a whole and of the arbitration agreement in particular, (2) there was a lack of voluntariness inasmuch as he was not in a position to negotiate or bargain with Performance

Toyota, (3) the arbitration clause was not reasonably related to the business risks of the parties, and (4) the arbitration clause was against public policy. *See Holyfield*, 476 F. Supp. at 109-10. Thus, he clearly raises issues of both substantive and procedural unconscionability.

¶40. Insofar as Russell's attack focuses on formation issues (i.e., lack of knowledge and voluntariness), the majority's reliance on *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 751 n.3 (5th Cir. 1996) to discuss Russell's procedural unconscionability claims is well-placed. However, Russell's claim that the arbitration provision was not reasonably related to the business risks of the parties goes to substantive, not procedural unconscionability. *Holyfield*, 476 F. Supp. at 110. It is therefore not covered by the holding of *Rojas*. Nor is Russell's claim that the arbitration clause violates public policy. *See Ex parte Foster*, 758 So. 2d 516, 520 n.4 (Ala. 1999) (citing 8 Richard A. Lord, *Williston on Contracts § 18.10* (4th ed. 1998)) (public policy goes to substantive unconscionability).

¶41. Recently, this Court refused to order a similar claim to arbitration, despite the fact that other alternatives were available for the purchaser. *East Ford, Inc. v. Taylor*, 2002 WL 1584301 (Miss.). The Court found the arbitration agreement to be a contract of adhesion, "drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms." *East Ford, Inc. v. Taylor*, 2002 WL 1584301, at *6 (citing *Holyfield*, 476 F. Supp. at 108). Similarly, Russell had no opportunity to negotiate this arbitration agreement with Performance Toyota. He could either sign its contract and accept all of its terms, or he could search for a automobile dealership which would not impose this clause upon him. Courts will deem a clause unconscionable and unenforceable if the signer is unable to procure necessary goods, such as an automobile, from any seller without agreeing to a similar provision. The buyer has no choice.

¶42. Though, as the majority argues, the arbitration clause held unconscionable in *East Ford* was more one-sided than the one in the case at bar, Russell's constitutional rights have nonetheless been taken away from him without his knowledge or consent. This Court has held, "[c]lauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into." *Farragut v. Massey*, 612 So. 2d 325, 330 (Miss. 1992) (quoting 17 Am. Jur. 2d *Contracts § 297*, at 298 n. 74 (1991)). *See also Quinn v. Miss. State Univ.*, 720 So. 2d 843, 851 (Miss. 1998). In the case at bar, the arbitration clause clearly limits the liability of Performance Toyota. It forecloses Russell's constitutional right to have a jury trial, as well as his constitutional right to have a judicial remedy for any wrong which he may have suffered at the hands of Performance Toyota. It forecloses his right to subpoena witnesses, and bears no reasonable relationship to the risks and needs of Performance Toyota. *Holyfield*, 476 F. Supp. at 109. *See also East Ford, Inc. v. Taylor*, 2002 WL 1584301 (Miss.) (McRae, P.J., dissenting). Performance Toyota has effectively limited its liability through this arbitration clause which does not permit Russell to receive punitive damages, no matter how egregious the conduct of Performance Toyota.

¶43. Article 3, Section 24 of the Mississippi Constitution of 1890 provides that for every injury there shall be a remedy: "All courts shall be open; and every person for an injury done him in his lands, good, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Article 3, Section 25 of the Mississippi Constitution of 1890 provides that the courts shall be open to all people: "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." Finally, Article 3, Section 31 provides: "The right of trial by jury shall remain inviolate . . .". The arbitration clause in

the case at bar effectively extinguishes Russell's constitutional right to a jury trial, as well as his constitutional right to have a judicial remedy and redress for any wrong or injury which may have been done to him by Performance Toyota. Furthermore, arbitration does not allow for appellate judicial review.

¶44. Moreover, despite the holdings of *Rojas* and its progeny, this contract is procedurally unconscionable, and Russell should be allowed to pursue a remedy in a court of law rather than through arbitration. Russell has not attacked the "formation of the contract as a whole" as the majority argues. He has not alleged that he was coerced into entering into the entire contract itself, but rather that he did not knowingly and voluntarily enter into the arbitration agreement specifically. As discussed above, procedural unconscionability may be proved by showing a "*lack of knowledge, lack of voluntariness*, inconspicuous print, the use of complex legalistic language, *disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms*." *Pridgen,* 88 F. Supp. 2d at 657 (quoting *York v. Georgia-Pac. Corp.*, 585 F. Supp. at 1278) (emphasis added).

¶45. Russell does not have the sophistication or legal resources that Performance Toyota, a corporation, has available. He is an average consumer with little or no knowledge of the ramifications of the arbitration agreement. He had no opportunity to negotiate this contract of adhesion. He has alleged that he did not understand that he would be forced to arbitrate any disputes and that he did not voluntarily enter into the arbitration agreement. "Where the attack is addressed to the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbitrator, resolves the issue." *Green Tree. Fin. Corp. v. Wampler*, 749 So. 2d 409, 413 (Ala. 1999). The threshold issue of unconscionability of an arbitration clause is a question for the court and not the arbitrator. *Id.* at 415. Performance Toyota had an obligation to show that the arbitration provision bears some reasonable relationship to the risks and needs of its business. *Holyfield*, 476 F. Supp. at 109. In this it has failed.

¶46. Though it is true, as the majority points out, that under Mississippi law a person is charged with knowing the contents of any document that he executes, *J.R. Watkins Co. v. Runnels,* 252 Miss. 87,172 So. 2d 567 (1965), it is difficult to "knowingly and intelligently waive a trial by jury and an arbitration clause in a pre-disposition arbitration because the consumer does not actually know what is involved in giving up their rights." *East Ford, Inc. v. Taylor*, 2002 W.L. 1584301 (Miss.) (McRae, P.J., dissenting). In the case at bar, there is no evidence that anyone at Performance Toyota explained the arbitration agreement or its ramifications to Russell. When a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of the terms or their consequences, it is unlikely that his consent was ever given to all the terms. In such a case, the usual rule that the terms of the agreement are not to be questioned should be abandoned, and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld. *Holyfield*, 476 F. Supp. 104. In the present case, it is clear that the arbitration clause was a contract of adhesion and that Russell was not free to negotiate its terms with Performance Toyota. It is also clear that Performance Toyota, a sophisticated dealer executing thousands of these form contracts, holds a superior bargaining position over Russell, a consumer who did not understandingly enter into the arbitration clause which severely limited his legal and constitutional rights.

¶47. The right to enter into contracts freely is one which we must strive to uphold and enforce. Likewise, leverage and bargaining power are properly sought and rewarded in arm's length transactions. However, where as here, contract obligations are not the product of free will, but result from one party's unfair control

over contract terms and extinguish guaranteed constitutional rights to free access to our courts, this Court has a duty to intervene and protect the innocent party. "Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent." *United States Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77, 80 (Miss. 1997) (quoting *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1188-89 (Miss. 1990). Accordingly, I dissent to the majority's affirmance of the order compelling arbitration. I would reverse and remand, instructing the trial court to hear Russell's claims against Performance Toyota.

### McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.

1. Justice Diaz, in his dissent, argues that the arbitration agreement was unconscionable under our recent opinion in *East Ford, Inc. v. Taylor,* 2002 WL 1584302 *6 (Miss. 2002) (motion for rehearing pending), in which we held that the arbitration provision was procedurally unconscionable. *East Ford* is easily distinguishable from the case sub judice. Most importantly, the arbitration provision allowed East Ford to pursue most of its claims against the customer in court, while the only option the customer had was to arbitrate his claims against East Ford. The arbitration provision limited the customer's remedy to actual damages only. The provision appeared less than one-third the size of many other terms in the document and appeared in very fine print and regular type font. All of the details concerning the vehicle were in boldface print while the arbitration provision was not.