On Application For Rehearing
The opinion of March 20, 1998, is withdrawn and this opinion is substituted therefor.
The defendant appeals from the denial of its request to compel arbitration.
Charles Brashier, a registered representative of Investment Management Research, Inc. ("IMR"), approached Douglas Hamilton about Hamilton's opening a securities investment account with IMR. Hamilton signed a "customer agreement" form authorizing IMR to serve as his introducing broker (the broker who deals with and places orders for Hamilton), and authorizing Raymond James 
Associates to serve as his clearing broker (the broker who takes IMR's order for Hamilton, executes the order through the stock exchange, and holds the securities in Hamilton's portfolio). Brashier managed Hamilton's account. Hamilton claimed that Brashier stole $200,000 that Hamilton had given to Brashier for securities investments.
Hamilton sued IMR and Brashier, alleging a violation of the Alabama Securities Act; a breach of fiduciary duty; conversion; theft; and misrepresentation. Hamilton later amended his complaint to add a claim alleging fraud in the inducement.[1]
Specifically, Hamilton alleged that he was fraudulently induced to sign the customer agreement, to open and maintain his IMR account, and to continue to invest moneys through Brashier. Hamilton claimed that he had been damaged as a result of the alleged fraudulent inducement, and he sought "rescission, revocation and/or avoidance of the customer agreement" that he had signed. Hamilton also claimed compensatory and punitive damages.[2]
The customer agreement Hamilton signed contained an arbitration agreement, which provided, in pertinent part, as follows:
"Arbitration is final and binding on the parties.
 "The parties are waiving their right to seek remedies in court, including the right to jury trial.
". . . .
 "The undersigned client agrees . . . that any controversy: (1) arising out of or relating to any of my accounts maintained individually or jointly with any other party, in any capacity, with you; or (2) with respect to transactions of any kind executed by you, through or with you, your officers, directors, agents, and/or employees directly or through an introducing broker; or (3) with respect to this agreement or any other *Page 73 
agreements entered into with you relating to my accounts, or the breach thereof, shall be resolved by arbitration. . . . Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof."
IMR moved to compel arbitration. Hamilton opposed IMR's motion, claiming that he had been fraudulently induced to sign the customer agreement; therefore, argued Hamilton, he was not bound by an arbitration clause in a contract that, as a result of fraud, was due to be rescinded, revoked, or voided.
The trial court denied IMR's motion to compel arbitration and to stay the action pending arbitration, and entered the following order:
 "At issue is whether the current state of the law permits the trial court to review the threshold question of whether the contract (which contains the arbitration clause) is a legally enforceable contract.
 "The parties do not contest the issue of the investment transaction affecting interstate commerce, as has been enunciated in Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
 "It is the opinion of this court that the United States Supreme Court case, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938[, 115 S.Ct. 1920, 131 L.Ed.2d 985] (1995), has provided a clarifying effect on the Terminix holding as regards the threshold issue of contract vel non. Alabama's Supreme Court has taken a parallel view as evidenced by the case of Ex parte Williams, 686 So.2d 1110 (Ala. 1996).
 "Specifically, [Hamilton] says the contract between the parties is due to be rescinded because of fraudulent inducement through suppression. This basis for determining the legality of the contract is based on Ala. Code 1975, § 6-5-102.
 "The First Options case and the Williams case uphold [Hamilton's] positions: That the initial issues of arbitrability — whether rescission or revocation invalidates the entire contract due to fraud in the inducement — must first be litigated by the trial court.
 "The fact that the complaint was amended, after a few months, to include a claim for fraud in the inducement is of no material substance. Indeed, in Texminix the fact that Allied-Bruce Terminix litigated the case in the Alabama courts first, then sought to have the matter submitted for arbitration, did not amount to an estoppel or waiver so as to preclude redress through arbitration.
 "Finally, Terminix found Alabama's pertinent statute disallowing arbitration to be contrary to federal law, and, thereby, said statute was preempted.
 "In this case, no state of Alabama statute controverts any federal statute which could have a preemptive effect. That is, § 6-5-102 does not conflict with any federal statute.
 "Further, under the due process provision of the United States Constitution (Amendment XIV, Sec. 1), and the states' rights provision (Amendment X), the citizens of the state of Alabama, by and through their legislature, are protected from being deprived of `life, liberty or property' without due process of law.
 "The right to seek redress under § 6-5-102 is tantamount to a property right which is protected by said due process clause.
"Hence, Motion to Arbitrate is denied."
IMR appealed.[3]
We agree with the trial court that there is no dispute that the customer agreement is a contract evidencing a transaction involving interstate commerce and is, therefore, governed by the Federal Arbitration Act ("FAA") (9 U.S.C. § 1 et seq.). We also agree that the threshold question is whether the customer agreement is a legally enforceable contract. Hamilton and IMR offer conflicting answers to this question, each finding support in decisions of the United States Supreme Court and in decisions of this Court. *Page 74 
Citing Prima Paint Co. v. Flood Conklin Mfg. Co.,388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and the Alabama decisions that have applied the holding in Prima Paint, IMR argues that whether the customer agreement, including the arbitration provision contained therein, is a valid, enforceable contract must be resolved by arbitration.
In Prima Paint, the Court considered the question "whether the federal court or an arbitrator is to resolve a claim of `fraud in the inducement,' under a contract governed by [the FAA] where there is no evidence that the contracting parties intended to withhold that issue from arbitration." 388 U.S. at 396-97,87 S.Ct. 1801.
Flood Conklin Manufacturing Company's paint business was purchased by Prima Paint Corporation. The documents evidencing this transaction were a purchase contract and a "consulting agreement," which provided that it "`embodie[d] the entire understanding of the parties on the subject matter.'"388 U.S. at 397-98, 87 S.Ct. 1801. The consulting agreement contained an arbitration clause that provided, in part:
 "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association . . ."
388 U.S. at 398, 87 S.Ct. 1801.
Prima Paint sued Flood Conklin ("F C"), alleging fraud in the inducement of the contract and seeking rescission of the contract, and it petitioned the trial court for an order enjoining F C from proceeding with arbitration. F C cross-petitioned for a stay of the court action and for an order compelling arbitration, claiming that the issue of fraud in the inducement of the contract was a question for an arbitrator and not for the court. The trial court granted F C's motion to stay, "holding that a charge of fraud in the inducement of a contract containing an arbitration clause as broad as this one was a question for the arbitrators and not for the court."388 U.S. at 399, 87 S.Ct. 1801.
The United States Court of Appeals for the Second Circuit dismissed Prima Paint's appeal. The United States Supreme Court granted Prima Paint's petition for certiorari review, but affirmed the Court of Appeals' judgment of dismissal:
 "Having determined that the contract in question is within the coverage of the Arbitration Act, we turn to the central issue in this case: whether a claim of fraud in the inducement of the entire contact is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators. The courts of appeals have differed in their approach to this question. The view of the Court of Appeals for the Second Circuit . . . is that — except where the parties otherwise intend — arbitration clauses as a matter of federal law are `separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. The Court of Appeals for the First Circuit, on the other hand, has taken the view that the question of `severability' is one of state law, and that where a State regards such a clause as inseparable a claim of fraud in the inducement must be decided by the court. [Citations omitted.]
 "With respect to cases brought in federal court involving [contracts] evidencing transactions in `commerce,' we think that Congress has provided an explicit answer. That answer is to be found in § 4 of the [Federal Arbitration] Act, which provides a remedy to a party seeking to compel compliance with an arbitration agreement. Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that `the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the `making' of the agreement to arbitrate — the federal court may proceed to adjudicate it. But *Page 75 the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."
Prima Paint, 388 U.S. at 402-04, 87 S.Ct. 1801 (first and third emphases added; second emphasis original).
In Jones v. Merrill Lynch, Pierce, Fenner Smith, Inc.,604 So.2d 332, 337 (Ala. 1991), we held:
 "Since Prima Paint, it has become clear that in cases involving claims of fraud in the inducement of a contract affecting interstate commerce, the court must first determine whether the fraud claim is directed solely at the arbitration clause itself. Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350, 1352 (11th Cir. 1986). . . . If so, the party opposing arbitration is entitled to a trial involving state law issues relating to the making of the arbitration clause.
 "If, however, . . . the court concludes that the claim of fraud actually bears upon the entire agreement and upon the activities of the parties in general, the provision in § 2 [of the FAA] regarding the revocation of contracts does not preclude the federally created right to specific performance of the arbitration clause. Were it otherwise, a skillfully crafted complaint would, in every case, necessitate a trial thus effectively eviscerating the FAA and circumventing the strong policy favoring arbitration."
(Citations omitted.)[4]
Relying on Prima Paint and Merrill Lynch, this Court, in OldRepublic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala. 1994), reversed the trial court's denial of the motion to compel arbitration as to the claim of fraud in the inducement of the contract, because that claim did not "place in issue the making of the arbitration clauses themselves." 644 So.2d at 1263.
In Ex parte Lorance, 669 So.2d 890 (Ala. 1995), this Court followed the rationale of Prima Paint and affirmed the trial court's order compelling arbitration in a tort/breach-of-contract action:
 "[The petitioner] argues that `even if the Court determines that the matter is subject to arbitration, the arbitration should be stayed until the Petitioner has had an opportunity to adjudicate his fraud-in-the inducement claims which, if successful, would void the arbitration provision.' [The petitioner's] argument, however, is contrary to applicable law. As long as an arbitration clause is broad enough to encompass claims of fraud in the inducement of the contract in which it is found, any claims as to fraud in the inducement of the contract generally, as opposed to the arbitration agreement specifically, are subject to arbitration. Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350 (11th Cir. 1986); Jones v. Merrill Lynch, Pierce, Fenner Smith, Inc., 604 So.2d 332 (Ala. 1991). Here, the arbitration clause states: `Any controversy or claim arising out of or relating to this *Page 76 
contract, or the breach thereof, shall be settled by arbitration. . . .' Clearly, [the petitioner's] claims as to fraud in the inducement of the contract `relat[e] to' the contract, and the arbitration clause is therefore broad enough to encompass those claims. [The petitioner] did not allege any claims of fraud in the inducement specific to the arbitration provision itself. Thus, all claims attacking the contract on the basis of fraud, suppression, deceit, etc., are subject to arbitration."
669 So.2d at 892-93 (emphasis added).
Hamilton maintains, however, that First Options of Chicago,Inc. v. Kaplan, supra, reflects the current state of the law in this area and requires this Court to affirm the trial court's denial of IMR's request to compel arbitration. First Options, decided nearly 30 years after Prima Paint, does not expressly overrule, nor does it refer to, Prima Paint. Hamilton maintains, however, that the rationale and holding of First Options are applicable whenever the preliminary question of arbitrability must be decided.
In First Options, the respondents — the Kaplans, individually, and the investment company they owned, MK Investments, Inc. ("MKI") — were indebted to the petitioner, First Options of Chicago. The parties negotiated a "workout agreement" for repayment of the respondents' debt, and the terms of that agreement were set out in four documents. The debt was not paid, and First Options sought arbitration pursuant to an arbitration provision contained in one of the four "workout agreement" documents. The document containing the arbitration provision was signed by MKI, but not by the Kaplans individually. The Kaplans opposed arbitration; however, the arbitration panel ruled that it had the power to conduct the requested arbitration and ruled in favor of First Options on the merits of the parties' dispute.
The Federal district Court confirmed the arbitrators' award, but the United States Court of Appeals for the Third Circuit, holding that the Kaplans' dispute with First Options was not subject to arbitration, reversed the district court's judgment confirming the arbitration award in favor of First Options and against the Kaplans.
The United States Supreme Court granted certiorari review, and a unanimous Court held:
 "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract). But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances. . . . Hence, who — court or arbitrator — has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration.
 "We believe the answer to the `who' question (ie., the standard-of-review question)is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question `who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances. If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently. These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration. See, e.g., . . . Allied-Bruce *Page 77 
Terminix Cos. v. Dobson, 513 U.S. 265, 271, 115 S.Ct. 834,130 L.Ed.2d 753 (1995). . . .
 "We agree with First Options, therefore, that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration. Nevertheless, that conclusion does not help First Options win this case. That is because a fair and complete answer to the standard-of-review question requires a word about how a court should decide whether the parties have agreed to submit the arbitrability issue to arbitration. . . .
 "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts. The relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration.
 "This Court, however, has . . . added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties intended to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so. In this manner the law treats silence or ambiguity about the question `who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question `whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' — for in respect to this latter question the law reverses the presumption.
 ". . . [G]iven the law's permissive policies in respect to arbitration, one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter. . . .
 "On the record before us, First Options cannot show that the Kaplans clearly agreed to have the arbitrators decide (i.e., to arbitrate) the question of arbitrability. . . .
 ". . . After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, "`are enforced according to their terms,"' Mastrobuono [v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 54, 116 S.Ct. 1212, 131 L.Ed.2d 76
(1995)] (quoting Volt Information Sciences, [Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488
(1989)]), and according to the intentions of the parties. That policy favors the Kaplans, not First Options."
514 U.S. at 942-47, 115 S.Ct. 1920 (some citations omitted; some emphasis original, other emphasis added).
Under the facts of this case, Hamilton's reliance on FirstOptions is misplaced.
In First Options, the Kaplans did not claim that the contracts evidencing their "workout agreement" with First Options were fraudulently induced or were, for that matter, deficient in any way. Nor did the Kaplans challenge the validity of the arbitration clause contained in the one document signed by MKI but not signed by them. Rather, the Kaplans based their opposition to arbitration, as to their individual claims, on the fact that nothing they had signed evidenced any intent on their part to agree to submit their differences with First Options to arbitration; because they had not signed anything indicating such an intent, they claimed the arbitrator did not have the power to decide arbitrability.
In First Options, the only document containing an arbitration provision was the one signed by MKI; the documents signed by the Kaplans did not contain an arbitration clause. Under the facts inFirst Options, where the contract between the parties did not address or decide who would decide the question of arbitrability, the dispute as to whether the Kaplans's individual claims were subject to arbitration was one for a court to decide.
The facts of this present case, however, place it within the application of the *Page 78 
principles announced in Prima Paint. Hamilton did not assert a claim of fraud in the inducement as to the arbitration clause; rather, Hamilton challenged the IMR customer agreement as having been fraudulently induced. In other words, Hamilton did not contend that the execution of the arbitration provision itself (i.e., apart from the execution of the other provisions of the customer agreement) was induced by fraud.
To reiterate, when a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court. On the other hand, when a claim of fraud in the inducement is directed toward the entire contract, as in this case, the issue is subject to arbitration. Because Hamilton claimed fraud in the inducement of the customer-agreement contract generally, as opposed to the arbitration clause specifically, Hamilton's claims against IMR are subject to arbitration according to the terms of the customer agreement he signed.
OPINION OF MARCH 20, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; REVERSED AND REMANDED.
[1] In an affidavit filed in support of his amended complaint, Hamilton stated that he was inexperienced in securities dealings and that he was "not a gambler." Hamilton claimed that Brashier told him he would handle Hamilton's money conservatively. Hamilton then stated that he did not know at the time he signed the customer agreement that he was authorizing a "margin account," that he did not know what a "margin account" was, and that it was never explained to him.
[2] Brashier is no longer employed by IMR. On March 13, 1996, Hamilton filed a motion for a default judgment against Brashier, stating that Brashier "ha[d] failed and refused to answer and!or respond to the summons and complaint which was served on him October 18, 1995." The motion to enter a default judgment was granted on April 1, 1996; Hamilton's proof of damages with regard to Brashier is still pending in the trial court.
[3] The denial of a motion to compel arbitration is appealable.9 U.S.C. § 15 (Federal Arbitration Act); A.G. Edwards Sons,Inc. v. Clark, 558 So.2d 358 (Ala. 1990).
[4] In A.G. Edwards Sons. Inc. v. Clark, 597 So.2d 197 (Ala. 1992), the plaintiff did not attack the arbitration provision itself until after the defendant had moved to compel arbitration. Although Syvrud addressed issues not presented here, we note the following discussion from that case:
 "[I]f fraud is alleged with respect to an arbitration provision itself [emphasis added in Syvrud], rather than toward the entire customer agreement that encompasses it, the claimant is not forced to arbitrate this claim under the FAA. Simply stated, if the fraud question relates solely to the valid creation of the requirement of arbitration, rather than the entire customer agreement, this claim can be litigated on state law contract principles to determine if the arbitration provision is to be rescinded. See, Jones v. Merrill Lynch, Pierce, Fenner Smith, Inc., [604 So.2d 332 (Ala. 1991)].
". . . .
 "In Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court stated that `if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the "making" of the agreement to arbitrate — the federal court may proceed to adjudicate it.' [Emphasis added in Syvrud.] In Jones, we stated that where this is the claim, `the party opposing arbitration is entitled to a trial involving state law issues relating to the making of the arbitration clause.' [Emphasis added in Syvrud.] Jones, [604 So.2d at 337]."
597 So.2d at 199-201.
HOOPER, C.J., and HOUSTON, SEE, and LYONS, JJ., concur.
MADDOX, J., concurs in the result.
ALMON, J., dissents.