841 So.2d 1216 (2001)
VOYAGER LIFE INSURANCE COMPANY
v.
Ada HUGHES et al.
Industrial Credit Corporation
v.
Ada Hughes and Dannie Hall.
Wayne Reynolds et al.
v.
Ada Hughes et al.
1000835, 1000863, and 1000876.
Supreme Court of Alabama.
December 21, 2001.
As Modified on Denial of Rehearing June 21, 2002.
*1217 Michael L. Bell and William H. King III of Lightfoot, Franklin & White, L.L.C., Birmingham; and Farrokh Jhabvala of Jorden Burt, L.L.P., Miami, Florida, for appellant Voyager Life Insurance Company.
Bruce F. Rogers and James W. Davis of Bainbridge, Mims, Rogers & Smith, L.L.P., Birmingham, for appellant Industrial Credit Corporation.
Charles P. Gaines and Mark A. Rasco of Gaines, Gaines & Rasco, P.C., Talladega, for appellants Wayne Reynolds, Alice Ann Rodgers, and Elizabeth Christy.
Lloyd W. Gathings II and Misha Y. Mullins of Gathings, Kennedy & Associates, Birmingham; Betty C. Love and Huel M. Love of Love, Love & Love, P.C., Talladega; Harvey B. Campbell, Jr., of Campbell & Campbell, Talladega; and Donald W. Lang, Talladega, for appellees Ada Hughes and Dannie Hall.
PER CURIAM.
These appeals are from the denial of motions to compel arbitration of disputes arising out of insurance agreements and small loan agreements. We affirm in part, reverse in part, and remand.

I. Background

A. Litigation
On April 8, 1996, Ada Hughes, who was unemployed and disabled, sued Voyager Life Insurance Company ("Voyager"), Industrial Credit Corporation ("ICC"), and Wayne Reynolds and other individual defendants (all hereinafter referred to together as "the defendants"). Her claims arose out of the sale to her of credit-disability insurance in conjunction with the *1218 execution of consumer loans. Specifically, Hughes complained that the defendants had intentionally concealed from her the fact that she was ineligible for coverage under the policies because she was disabled at the time the policies were issued, and, therefore, the credit-disability insurance policies were of no value to her. One year after filing that action, Hughes amended her complaint to include a class-action claim against the same defendants. Three years of complaints, answers, motions for discovery, a possible class certification, and other motions from each party followed. An amendment to Hughes's complaint filed in August 2000 joined a new plaintiff, Dannie Hall. Only days after Hughes, Hall, and the other members of the putative class had moved for class certification, the defendants moved to compel arbitration in this case.
After extensive briefs from all parties and a hearing on the matter, the trial court denied the defendants' motion to compel arbitration, finding that the defendants had substantially invoked the litigation process and had thereby waived their right to invoke arbitration; it also found that the requirement in the loan agreements that the borrower pay arbitration fees on the loans violated a provision of the Small Loan Act and, thus, voided the agreements. The defendants appealed separately to this Court, and the cases were consolidated for the purpose of issuing one opinion.

B. Facts
ICC is in the business of making small consumer loans; it commonly sells credit-disability insurance through Voyager as part of its loan transactions. From 1991 to 1995, Hughes took out several loans from ICC and purchased credit-disability insurance through Voyager in conjunction with each of those loans. The individual defendants were agents and employees of ICC and Voyager. When she took out the loans and purchased the insurance, Hughes was disabled and unemployed. This fact rendered the credit-disability insurance Hughes had purchased of no value to her because of an exclusion in the policies. The loan agreement and the credit-disability insurance policy Hughes purchased from ICC and Voyager in 1995 contained the arbitration clause now in question.
Dannie Hall, another plaintiff, was also disabled and unemployed from 1995 to 2000, the period during which she took out consumer loans from ICC and purchased credit-disability insurance from Voyager. The documents evidencing several of her transactions included arbitration agreements. She was joined as a plaintiff in the lawsuit in August 2000.
Hughes first proposed the class action in an amended complaint filed in 1997. In that complaint she proposed two separate classes of individuals: the first class was to consist of all disabled individuals who were also unemployed and who, while disabled and unemployed, had executed a consumer-loan agreement with ICC and who were sold a credit-disability insurance policy by Voyager; the second class was to consist of those individuals in the State of Alabama who had obtained consumer loans from ICC and who, in the course of executing the loan agreements evidencing those loans, had contracted with ICC to pay charges (arbitration fees) that are not authorized by the Alabama Small Loan Act, § 5-18-1 et seq., Ala.Code 1975. The motion for class certification was made in August 2000, and the trial judge scheduled a hearing on the motion for October of the same year.

II. Analysis
The primary question in this case is whether the defendants can compel arbitration *1219 of Hughes and Hall's claims, in accordance with the signed loan agreements and the disability insurance policies. To answer this question, the trial court had to determine two issues: One, whether by their delay in moving to compel arbitration, the defendants had waived the right to compel arbitration under the agreements; and two, whether the clauses in certain of the contracts requiring the parties to the contract to share arbitration costs voided the contracts.

A. Waiver of the Right to Arbitrate
The trial court ruled that the defendants had waived their right to compel arbitration as to all of the plaintiffs because, it said, they had "substantially invoke[d] the litigation process and [had] thereby substantially prejudice[d] the party opposing arbitration." Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995).
"Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration."
670 So.2d at 899. Thus, the test for whether one has waived the right to compel arbitration has two prongs: (1) substantial participation in the litigation process by the party moving for arbitration and (2) prejudice to the party opposing arbitration.
It should be noted that "[n]o rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case." 670 So.2d at 899. This means that the trial judge's determinations should be given substantial weight upon review. Of course, it is also true that "[o]ur cases continue to make it clear that, because of the strong federal policy favoring arbitration, a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden." Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1164 (Ala. 1998). The determination whether the defendants have waived their right to compel arbitration needs to be made separately for each plaintiff, based on the defendants' behavior toward each of them.
Hughes instituted her suit in 1996. Since that time, Hughes has restated and amended her complaint four times; opposed the defendants' motions to consolidate and to dismiss; attempted to depose the defendants; and spent a considerable amount of time calling for a class action in this matter. The defendants in the action did the following over this same four-year period: answered Hughes's complaints on the merits; pursued a cross-claim; filed two third-party indemnity actions; conducted and participated in discovery, including deposing Hughes; moved to dismiss the case; participated in a class-action scheduling conference; and requested that the case be consolidated with a similar case involving similar contractual agreements.
Wilson informs us that "`"`[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver.'"'" 716 So.2d at 1164, quoting Ex parte Merrill Lynch, Pierce, Fenner, & Smith, Inc., 494 So.2d 1, 3 (Ala.1986), quoting in turn Clar Prods., Ltd. v. Isram Motion Pictures, 529 F.Supp. 381, 383 (S.D.N.Y.1982). But it also notes that "`"the earliest point at which waiver of the right to arbitration *1220 may be found `is when the other party files an answer on the merits.'"'" 716 So.2d at 1164, quoting Ex parte Merrill Lynch, 494 So.2d at 3, quoting in turn Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291, 293 (2d Cir.1965). In this case, the defendants seeking to compel arbitration have filed answers on the merits and participated in discovery. So, the key remains "the particular facts" of this case. Whitesell Mfg., Inc., 670 So.2d at 899.
There is no question that the defendants substantially engaged in the litigation process with Hughes. The defendants counter by stating that Hughes's actions in the case are the reason for the four-year delay in moving to enforce the arbitration clause and that because Hughes amended her complaint as recently as August 2000, there was no substantial delay in their asserting their right to arbitrate the claims. This contention would carry more weight if the defendants had not waited over three years to assert arbitration as a defense to Hughes's claims. In all three answers they submitted to the complaints filed by Hughes, the defendants did not raise the issue of arbitration. Only after Hughes moved for class certification and the trial court had set a hearing on certification did the defendants decide to invoke the right to arbitrate. Given these circumstances, the timing of the defendants' motion to compel arbitration seems suspect.
The record clearly demonstrates that the defendants participated in many aspects of litigation during this four-year period. Moreover, Hughes first mentioned the possibility of converting the action to a class action in her 1997 amended complaint; thus, the defendants knew for three years that Hughes was preparing for class-action litigation, yet they continued to participate. We conclude, therefore, that the trial court was correct in determining that the defendants had waived their right to invoke arbitration against Hughes.
The trial court's decision to find in favor of Hall and the putative classes on the waiver issue, however, is a different matter. Hall did not join the lawsuit until Hughes submitted her amended complaint in August 2000. The defendants filed their motion to compel arbitration, at the latest, 26 days later. The defendants could not be said to have substantially invoked the litigation process on such short notice with respect to Hall.[1]
Although we conclude that there was no waiver of the right to compel arbitration by the defendants as to Hall and the putative classes she may represent, possible contract defenses, whether the contract involves interstate commerce, or any other viable defenses to the enforcement of the arbitration provisions remain available to these plaintiffs. Because there has not been substantial litigation with regard to these plaintiffs, neither has there been the opportunity to make other substantive challenges to the agreements between the defendants and these plaintiffs.
Thus, we affirm the trial court's determination that the defendants have waived their right to arbitrate the dispute with Hughes. We reverse the trial court's judgment extending the waiver to Hall and the putative classes whom Hall may represent, *1221 while leaving other substantive defenses to the agreements open to these plaintiffs.

B. Effect of Contract Provision Calling for Sharing Arbitration Costs
The trial court also found that "those contracts of the plaintiffs and the members of the putative class that fall within the purview of the Alabama Small Loan Act are not subject to arbitration due to the invalidity of those contracts." All of the contracts in question contained arbitration clauses that provided that the parties to the contracts share the costs of arbitration. The trial court reasoned that because the Small Loan Act (§ 5-18-1 et seq., Ala.Code 1975) does not permit any charges in a loan contract other than those listed in the Act,[2] and arbitration costs are not among those listed, the cost-sharing clauses voided the contracts. The defendants argue, for the first time on appeal, that these contracts were made under the Alabama Mini-Code (§ 5-19-1 et seq.), rather than the Small Loan Act, that the Mini-Code does not prohibit the sharing of these costs, and that, therefore, the sharing of arbitration costs is permissible and does not void the contracts.
Because the defendants did not argue at the trial court level that the Mini-Code, as opposed to the Small Loan Act, governed the loans at issue, the argument is not properly before this Court. The argument is irrelevant as to Hughes, because we have already determined that the defendants have waived their right to compel arbitration against her. The right to compel arbitration has not been waived as to Hall and the members of the putative classes she may represent, so the question whether the Mini-Code or the Small Loan Act applies to these contracts may play a part in determining whether the defendants can invoke the arbitration clauses in these contracts. Because the trial court did not have the opportunity to rule on the question of which statutory scheme applies to these contracts, we leave this question open for the trial court's determination on remand.[3]
In sum, because the defendants substantially invoked the litigation process as to Hughes, we affirm the trial court's ruling that the defendants waived their right to compel arbitration as to her. Because the defendants have not had ample opportunity to substantially invoke the litigation process as to Hall and the members of the putative classes she may represent, we reverse the trial court's decision that the defendants had waived their right to arbitration as to those plaintiffs. Finally, because the issue whether the Small Loan Act or the Mini-Code applies to these contracts was not argued at the trial court level, we make no determination on that issue and leave it for the trial court's determination in subsequent proceedings in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, and HARWOOD, JJ., concur.
*1222 WOODALL and STUART, JJ., concur in the result.
JOHNSTONE, J., concurs in part and dissents in part.
SEE, J., dissents.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in the affirmance of the denial of the defendants' motions to compel the plaintiff Hughes to arbitrate her claims. I respectfully dissent, however, from any implication that the defendants' not waiving their right, if any, to compel the new plaintiff Hall to arbitrate could mean that the defendants have not waived their right to compel the putative class members to arbitrate.
The putative class members' primary class representative has always been the original plaintiff Hughes, whose claims are no longer subject to arbitration because the defendants have waived their right, if any they had, to arbitrate Hughes's claims. Thus, the defendants' not waiving a right to compel Hall to arbitrate is immaterial to the issue whether the defendants' waiver of their right, if any, to compel Hughes to arbitrate operates as a waiver of the defendants' right, if any, to compel the putative class members to arbitrate.
SEE, Justice (dissenting).
I dissent from that part of the main opinion that concludes that by participating in the litigation process the defendants have waived their right to compel Hughes to arbitrate. As this Court stated in Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1164 (Ala.1998), `"[m]erely answering on the merits, asserting a counterclaim (or crossclaim) or participating in discovery, without more, will not constitute a waiver [of the right to compel arbitration].' "(Quoting Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, 3 (Ala.1986), quoting other cases.) Courts are encouraged to look at the facts of each case in determining whether a party has waived its rights to enforce a valid arbitration agreement. See Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). In this case, Hughes amended her complaint repeatedly, eventually moving for class certification. When Hughes's claims reached a relatively final form and Hughes sought class certification, the defendants moved, within two days, to compel arbitration.
I respectfully dissent from the main opinion's holding that the defendants waived their right to compel Hughes to arbitrate her dispute with them.
NOTES
[1] We note that at least one of the arbitration agreements Hall signed disclaimed punitive damages. In Cavalier Manufacturing, Inc. v. Jackson, 823 So.2d 1237, 1246 (Ala.2001), we held that "an arbitration clause that forbids an arbitrator from awarding punitive damages is contrary to public policy in Alabama and, thus, is void." However, Hall has never argued the disclaimer of punitive damages as a basis for not enforcing the arbitration provisions; therefore, that argument is not properly before this Court on this appeal.
[2] Before it was amended effective May 28, 1996, § 5-18-15(h) read: "If any amount in excess of the charges permitted in this section is charged, contracted for or received, except as the result of an accidental or bona fide error of computation, the contract of loan shall be void...."
[3] It appears from its order that the trial court believed that at least some of the contracts fell under the purview of the Small Loan Act, but the order does not explain why that act applies or to which contracts it applies. Because the defendants did not refer to the Mini-Code in their arguments at the trial court level, the trial court's failure to so explain is not surprising, but it necessitates that we leave this question open for further proceedings before the trial court.