973 So.2d 344 (2007)
PAW PAW'S CAMPER CITY, INC., et al.
v.
Leroy HAYMAN and Diana Hayman.
1050873.
Supreme Court of Alabama.
May 18, 2007.
*345 Larry Canada of Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Louisiana; and Jeremiah J. Talbot of Galloway, Johnson, Tompkins, Burr & Smith, Gulf Breeze, Florida, for appellants.
Edward J. Noojin, Jr., and Bert P. Noojin of Noojin & Noojin, P.C., Fairhope, for appellees.
LYONS, Justice.
Paw Paw's Camper City, Inc., and its employees, Terri Myers and Randy Blackmon (collectively referred to as "the sellers"), appeal from the trial court's order denying their motion to compel arbitration. We affirm.

I. Factual Background and Procedural History
Paw Paw's Camper. City, Inc., is a Mississippi corporation engaged in the business of selling motor homes. It maintains a dealership in Mobile County. During the events made the basis of this case, Myers was employed by Paw Paw's Camper City as a salesperson and Blackmon was employed as a sales manager.
In January 2005, Paw Paw's Camper City was holding an off-site sale of its motor homes in Mobile. Diana Hayman visited the off-site sale and expressed to Myers an interest in purchasing a 2005 Holiday Rambler Scepter motor home. Several days after Diana Hayman had viewed the motor home, her husband, Leroy Hayman, visited the off-site sale to view the motor home. Leroy Hayman expressed an interest in purchasing the motor home and began negotiating the terms of the purchase price with Myers.
After the Haymans had completed a consumer credit application, the lender approved the Haymans' purchase of the Holiday Rambler Scepter; the payments were to be $1,900 per month for a term of 240 months. The Haymans state that they rejected those terms and informed the sellers that they would not pay more than $1,500 per month for a term of 240 months to purchase the motor home.
The sellers say that on January 31, 2005, they informed the Haymans that they could sell the Holiday Rambler Scepter to them for approximately $1,300 per month, but that in order "to make the deal work," the sale documents had to be completed that day. Leroy Hayman testified that he had estimated the monthly payments on the motor home to be approximately $1,500 and that the sellers' offer of approximately $1,300 per month was "cheaper than [he] thought it was going to be."[1] The Haymans agreed to purchase the Holiday Rambler Scepter, and, on January 31, *346 2005, they executed several documents, including a retail buyer's order. The retail buyer's order is a preprinted form that contains a section in which the terms of the sale are to be inserted, including the amount of the monthly payment and the length of the financing term. The retail buyer's order also contains the following arbitration provision:
"Any claim, dispute, or other matter in question, arising out of or related to this agreement or the vehicle which is the subject of this agreement, or any defect, complaint or problem arising out of said vehicle, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. In the event that the claim, dispute or the other matter in question between the parties is not resolved by mediation, [it] shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the rules of the American Arbitration Association currently in effect at the time the claim, dispute or other matter arises. The demand for arbitration shall be filed in writing with the other party to this agreement and with the American Arbitration Association. The parties shall share the mediator's fee and any filing fees for mediation and/or arbitration equally. Mediation and/or arbitration shall be held in Mobile County. The order rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."
The Haymans allege that at the time they signed the retail buyer's order, the section containing the amount of the monthly payments and the length of the financing term was blank. Leroy Hayman testified that Blackmon represented to them that the secretary who would insert the amounts in those blanks was unavailable and that the section containing the terms of the sale would be completed later.
The Haymans returned to Paw Paw's Camper City on February 5, 2005, and were given a copy of the sale documents, including a copy of the retail buyer's order. The Haymans say that at that point they discovered that the section of the retail buyer's order relating to the financing terms had been completed to indicate that their monthly payments on the Holiday Rambler Scepter were $1,341.77 for a term of 300 months. The Haymans informed the sellers that they had not agreed to a financing term of 300 months but had agreed to a financing term of only 240 months. The Haymans refused to accept delivery of the motor home because of the 300-month financing term. The Haymans contend that the sellers have retained their down payment of $70,166.81.
The Haymans allege that an agreement to purchase the motor home with a financing term of 240 months was reached between them and the sellers; that at the time they signed the retail buyer's order, the section specifying the financing terms had not been completed; and that the financing term of 300 months was added by the sellers after the Haymans had signed the document. The sellers contend that the parties agreed to a financing term of 300 months and that that term was listed in the retail buyer's order at the time the Haymans signed the document.
The Haymans filed this action on March 25, 2005; their complaint alleged breach of contract, fraud in the inducement of a contract, and fraud in the procurement of an arbitration agreement. Soon thereafter, the Haymans served interrogatories and requests for production upon the sellers. The sellers answered the complaint on May 10, 2005, asserting as an affirmative defense the arbitration provision and reserving *347 their right to seek a dismissal based on the arbitration provision. Nevertheless, the sellers also asserted a counterclaim and demanded a trial by jury.
When the sellers failed to respond to their discovery requests, the Haymans in July 2005 moved the trial court for sanctions and to hold the sellers in contempt; they again moved for sanctions and contempt in January 2006. At no time during these discovery disputes did the sellers suggest that any of the claims made the basis of the Haymans' discovery requests were subject to resolution by arbitration. The sellers served their own interrogatories and requests for production in July 2005. In response to a motion for a trial setting filed by the Haymans on December 28, 2005, the trial court imposed a 60-day deadline for completing discovery and set the matter for trial on April 3, 2006. Again, the sellers interposed no objection that any of the claims made the basis of discovery was subject to arbitration. On December 28, 2005, the Haymans took the depositions of two employees of Paw Paw's Camper City, Inc. On February 1, 2006, the sellers deposed the Haymans. Both the sellers and the Haymans called upon the trial court on numerous occasions to intercede during these depositions in order to settle disputes that arose between the parties. Again, the sellers interposed no objection that any of the claims made the basis of the discovery was subject to arbitration. On February 6, 2006, the sellers filed a motion to compel arbitration and to stay further discovery.

II. Standard of Review
Where, as here, no ore tenus testimony is taken before the trial court, we review de novo a determination that a party has waived its right to arbitration. Hales v. ProEquities, Inc., 885 So.2d 100, 105 (Ala.2003).

III. Analysis

A. Waiver of Arbitration by Substantial Invocation of the Litigation Process
Our review of the issue whether a party has waived its right to arbitration by substantially invoking the litigation process is governed by the standard enunciated in Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995):
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Both substantial invocation of the litigation process and prejudice must be present to establish waiver. Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986). Because of the strong federal policy applicable to arbitration proceedings set forth in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., one seeking to establish a waiver of arbitration bears a heavy burden. SouthTrust Bank v. Bowen, 959 So.2d 624 (Ala.2006); Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).

B. Substantial Invocation of the Litigation Process
The sellers rely on Ex parte Merrill Lynch, Pierce, Fenner & Smith, *348 Inc., supra, for the proposition that a delay of over one year from the filing of the complaint is insufficient evidence of waiver of arbitration. As we noted in Companion Life Insurance Co., "waiver must . . . be based on the particular facts of each case." 670 So.2d at 899. We explained in Ex parte Merrill Lynch why the one-year period in that case was deemed reasonable:
"Plaintiff, however, waited nearly ten months before she filed notice with the court that she was opting out of the class in the pending federal multidistrict litigation in New York. Defendants had no reason to seek arbitration before plaintiffs opt-out, as they could have reasonably believed that plaintiff would obtain her relief in the federal suit, and, consequently, that the action in Jefferson County would then be dismissed."
494 So.2d at 3. The circumstances herea lapse of approximately 10 months between commencing the action and filing a motion to compel arbitration, during which both sides conducted extensive discovery and the case was set for trial without objection from the sellers[2]are simply not remotely comparable to the circumstances in Ex parte Merrill Lynch.
The sellers note that in Ex parte Merrill Lynch, the Court held that "`"[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver."'" 494 So.2d at 3 (quoting Clar Prods., Ltd. v. Isram Motion Pictures Prod. Servs., Inc., 529 F.Supp. 381, 383 (S.D.N.Y.1982), quoting in turn Demsey & Assocs., Inc. v. S.S. Sea Star, 461 F.2d 1009, 1018 (2d Cir.1972)). But, as we stated in Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216, 1219-20 (Ala. 2001), waiver may be found as early as filing an answer on the merits. In Terminix International Co. v. Jackson, 669 So.2d 893, 896 (Ala.1995), we noted that we had previously stated in Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272, 1277 (Ala.1986) (citing Demsey & Assocs., Inc., supra, and Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777 (3d Cir.1975)), that "`[t]he joining of issue on the merits, assertion of a counterclaim or cross-claim, or engaging in discovery, alone, is not sufficient to create a waiver.'" Yet, in Terminix, the plaintiff's complaint set forth claims of breach of contract and fraud, and the motion to compel arbitration was directed only to the breach-of-contract claim. Here, the motion to compel arbitration is directed to both the breach-of-contract claim and the claim of fraud in the inducement of the entire contract and was filed after all the pretrial activity described in Terminix, plus, a factor not found in Terminix, after the case had been set for trial without objection from the party moving to compel arbitration. Again, "waiver must . . . be based on the particular facts of each case." Companion Life Ins. Co., 670 So.2d at 899.
The sellers contend that their extensive involvement in the litigation process is justifiable based upon our precedent relegating to the court, and not the arbitrator, a claim of fraud in the procurement of the arbitration clause, separate from the issue of fraud in the inducement of the entire agreement. See, e.g., Investment Mgmt. & Research, Inc. v. Hamilton, 727 So.2d 71 (Ala.1999). The sellers further contend that the motion to compel arbitration was filed just two days after the depositions of the Haymans in which, they say, they discovered for the first time that the claim of *349 fraud in the procurement of the arbitration clause had no basis in fact.
Hamilton differs from this proceeding in that in that case no claim was presented as to fraud in the inducement of the entire contract. Further, it does not deal with a waiver of the right to arbitration by substantial invocation of the litigation process. Although the issue of fraud in the procurement of the arbitration agreement is a question for the court to resolve, the sellers offer no explanation for their failure to obtain an early resolution of this issue by immediately moving to compel arbitration and attaching affidavits of their representatives establishing an agreement to arbitrate. At that juncture it would have been incumbent upon the Haymans to bring forth evidence of fraud in the procurement of the arbitration agreement. If the Haymans failed to do so, the motion would have been due to be granted. If the Haymans submitted affidavits in opposition to the sellers' motion to compel arbitration, the sellers could have sought discovery limited to that necessary to resolve the dispute as to arbitrability falling within the province of the trial court. See Ex parte Bill Heard Chevrolet, Inc., 927 So.2d 792, 798 (Ala.2005), for a thorough analysis of the proper course of conduct for a party exposed to discovery on all issues in an action when that party has the contractual right to resolution of disputes by arbitration. Yet the sellers offer no justification for their acquiescence in, and indeed participation in, preparation for trial of all issues and for their agreement to defer the deposition of the key witnesses on the issue of fraud in the procurement of the arbitration agreement until shortly before trial.

C. Prejudice
Having found that there has been a substantial invocation of the litigation process, we now address the issue of prejudice. The Haymans point out that "[t]he pure cost to the plaintiffs, just for the [four] depositions, has been more than $1650." The sellers criticize the Haymans' statement that they have expended $9,400 in this litigation for its lack of specificity in identifying additional costs that would not have been incurred in arbitration. The sellers hypothesize in their brief to this Court that "the minimal discovery which was conducted prior to [the sellers'] seeking to compel arbitration would also have been conducted in arbitration." The sellers offer no authority for the proposition that we may take judicial notice of their speculation that an arbitrator in this proceeding would have allowed the same degree of discovery that took place in the Mobile Circuit Court before the sellers filed their motion to compel arbitration, and we decline to do so. For all that appears, the arbitrator would have exercised its discretion in favor of allowing no discovery.
Moreover, the difficulty in quantifying the degree of preparation for a jury trial, as opposed to a trial before an arbitrator, was discussed in a special writing in Hales v. ProEquities, Inc., supra, as follows:
"The Haleses' assertions that they were substantially prejudiced in preparing for a jury trial, as opposed to arbitration, are not accompanied by any specific details. However, it is difficult to quantify such activity. I have not been away from the practice of law so long as to forget that the details essential to adequate preparation for trial before a jury are more elaborate than when the trial is before the court or the case is presented to an arbitrator."
885 So.2d at 107-08 (Lyons, J., concurring specially). As the Court stated in Hales, "`[p]rejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of *350 litigation expenses that arbitration was designed to alleviate.'" 885 So.2d at 105-06 (quoting Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995)). The Haymans have amply shown prejudice from participating in full-blown pretrial discovery addressing all the issues in the case.
Although a party asserting that the other party has waived the right of arbitration by participating in pretrial preparation bears a heavy burden and operates in face of a presumption against a waiver of the right to arbitrate, SouthTrust Bank v. Bowen, supra, a line must be drawn somewhere, and, if it is not drawn here, we should revise our standard to state that a party asserting pretrial waiver bears a virtually impossible burden and faces an irrebuttable presumption.

IV. Conclusion
Because the Haymans have shown both substantial invocation of the litigation process by the sellers and prejudice, we conclude that the sellers have waived their right to arbitration. The order of the trial court denying the sellers' motion to compel arbitration is due to be affirmed.
AFFIRMED.
COBB, C.J., and WOODALL, PARKER, and MURDOCK, JJ., concur.
SMITH, J., concurs in the result.
SEE, STUART, and BOLIN, JJ., dissent.
BOLIN, Justice (dissenting).
Because I believe that the sellers have not waived their right to compel arbitration, I must respectfully dissent.
This Court has stated;
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). Thus, in order to establish a waiver of the right to arbitrate a dispute, the party opposing arbitration must demonstrate both (1) that the party seeking to compel arbitration has substantially invoked the litigation process and (2) that the party opposing arbitration would be substantially prejudiced by an order compelling arbitration. SouthTrust Bank v. Bowen, 959 So.2d 624 (Ala.2006). Because there is no rigid rule for determining what constitutes a waiver of the right to arbitrate, the determination as to whether there has been a waiver must be based on the particular facts of each case. Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216 (Ala.2001). Thus, the trial judge's determinations should be given substantial weight on appeal. Id. However, a presumption exists against a finding that a party has waived its right to compel arbitration. Bowen. Further, "[o]ur cases continue to make it clear that, because of the strong federal policy favoring arbitration, a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden." Mutual *351 Assurance, Inc. v. Wilson, 716 So.2d 1160, 1164 (Ala.1998).
The Haymans argue on appeal that the sellers have waived their right to arbitrate because, they say, the sellers have substantially invoked the litigation process by filing a counterclaim and requesting a jury trial; by participating extensively in the discovery process, including filing, and responding to, a number of motions relating to discovery; by participating in the taking of four depositions; and by waiting approximately 10 months from the date the complaint was filed and 56 days before the case was to be tried before moving to compel arbitration. "`"Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver."'" Ex parte Merrill Lynch, Pierce, Fenner & Smith, 494 So.2d 1, 3 (Ala.1986) (quoting Clar Prods., Ltd. v. Isram Motion Pictures Prod. Servs., Inc., 529 F.Supp. 381 (S.D.N.Y.1982)). "But . . . `"`the earliest point at which waiver of the right to arbitration may be found "is when the other party files an answer on the merits."'"'" Hughes, 841 So.2d at 1219-20 (quoting Wilson, 716 So.2d at 1164, quoting other cases).
In Terminix International Co. v. Jackson, 669 So.2d 893 (Ala.1995), the plaintiffs agreed to purchase a house from a third party. At the closing, the third party showed the plaintiffs a document that had been prepared by Terminix indicating that Terminix had inspected the house and had observed existing termite damage; a graph attached to the document specifically described the nature and extent of the damage. The third party assigned to the plaintiffs his rights in a termite bond he had previously acquired from Terminix. This bond contained an arbitration clause, which provided that any dispute arising out of or relating to the termite bond would be settled by arbitration.
Subsequently, the plaintiffs discovered substantial termite damage to the house and sued Terminix, alleging fraud and breach of contract. The plaintiffs alleged that Terminix had misrepresented the nature of the termite damage and had breached the termite bond by failing to repair their house in accordance with the terms of the bond. Terminix moved to compel arbitration of the plaintiffs' breach-of-contract claim pursuant to the arbitration clause in the termite bond. The plaintiffs argued in response to the motion to compel arbitration that Terminix had waived its right to arbitration because Terminix did not move to compel arbitration until seven months after the action against it was filed, because Terminix filed requests for admissions, interrogatories, and requests for production of documents, because five depositions had been taken by the parties, and because the plaintiffs had spent over $900 in deposition expenses.
In concluding that the plaintiffs had failed to establish that Terminix had waived its right to compel arbitration, this Court determined that the plaintiffs were placed on notice of Terminix's arbitration rights when Terminix answered the plaintiffs' complaint and pleaded the arbitration clause as a defense, thereby not evincing "an intent to abandon the right to seek arbitration.'" Jackson, 669 So.2d at 896 (quoting Ex parte Merrill Lynch, 494 So.2d at 3).[3] Here, the sellers, like the defendant in Jackson, supra, answered the complaint asserting as an affirmative defense the arbitration provision contained in the "Retail Buyer's Order." The sellers *352 specifically stated that they reserved their right to seek a dismissal of the Haymans' claims based on the arbitration provision and that they were not waiving that right by answering the complaint.
In Investment Management & Research, Inc. v. Hamilton, 727 So.2d 71 (Ala.1999), Charles Brashier, a representative of Investment Management & Research, Inc. ("IMR"), approached Douglas Hamilton about opening a securities-investment account with IMR. Hamilton agreed and opened the account with IMR; the account was managed by Brashier. Subsequently, Hamilton alleged that Brashier stole $200,000 Hamilton had given Brashier for the securities-investment account.
Hamilton sued IMR and Brashier, alleging various theories of recovery, including a claim that he was fraudulently induced to open and maintain his IMR investment account and to continue to invest moneys with IMR through Brashier. A customer agreement Hamilton signed contained an arbitration agreement. IMR moved to compel arbitration. Hamilton opposed the motion by arguing that he had been fraudulently induced to sign the customer agreement; therefore, he argued, he was not bound by an arbitration clause in a contract that, as a result of fraud, was due to be rescinded, revoked, or declared void. The trial court denied IMR's motion to compel arbitration and to stay the action pending arbitration.
In reversing the trial court's denial of the motion to compel arbitration, this Court stated:
"Citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and the Alabama decisions that have applied the holding in Prima Paint, IMR argues that whether the customer agreement, including the arbitration provision contained therein, is a valid, enforceable contract must be resolved by arbitration.
"In Prima Paint, the Court considered the question `whether the federal court or an arbitrator is to resolve a claim of "fraud in the inducement," under a contract governed by [the Federal Arbitration Act] where there is no evidence that the contracting parties intended to withhold that issue from arbitration.' 388 U.S. at 396-97, 87 S.Ct. 1801.
". . . .
"`Having determined that the contract in question is within the coverage of the [Federal] Arbitration Act, we turn to the central issue in this case: whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators. The courts of appeals have differed in their approach to this question. The view of the Court of Appeals for the Second, Circuit . . . is thatexcept where the parties otherwise intendarbitration clauses as a matter of federal law are "separable" from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. The Court of Appeals for the First Circuit, on the other hand, has taken the view that the question of "severability" is one of state law, and that where a State regards such a clause as inseparable a claim of fraud in the inducement must be decided by the court. [Citations omitted.]
"`With respect to cases brought in federal court involving [contracts] evidencing *353 transactions in "commerce," we think that Congress has provided an explicit answer. That answer is to be found in § 4 of the [Federal Arbitration] Act, which provides a remedy to a party seeking to compel compliance with an arbitration agreement. Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the "making" of the agreement to arbitratethe federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.'
"Prima Paint, 388 U.S. at 402-04, 87 S.Ct. 1801 (first and third emphasis added. [in Hamilton]; second emphasis original).
"In Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332, 337 (Ala.1991), we held:
"`Since Prima Paint, it has become clear that in cases involving claims of fraud in the inducement of a contract affecting interstate commerce, the court must first determine whether the fraud claim is directed solely at the arbitration clause itself. Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350, 1352 (11th Cir. 1986). . . . If so, the party opposing arbitration is entitled to a trial involving state law issues relating to the making of the arbitration clause.
"`If, however, . . . the court concludes that the claim of fraud actually bears upon the entire agreement and upon the activities of the parties in general, the provision in § 2 [of the Federal Arbitration Act] regarding the revocation of contracts does not preclude the federally created right to specific performance of the arbitration clause. Were it otherwise, a skillfully crafted complaint would, in every case, necessitate a trial thus effectively eviscerating the [Federal Arbitration Act] and circumventing the strong policy favoring arbitration.'
"(Citations omitted.)
"Relying on Prima Paint and Merrill Lynch, this Court, in Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994), reversed the trial court's denial of the motion to compel arbitration as to the claim of fraud in the inducement of the contract, because that claim did not `place in issue the making of the arbitration clauses themselves.' 644 So.2d at 1263.
"In Ex parte Lorance, 669 So.2d 890 (Ala.1995), this Court followed the rationale of Prima Paint and affirmed the trial court's order compelling arbitration in a tort/breach-of-contract action:
"[The petitioner] argues that "even if the Court determines that the matter is subject to arbitration, the arbitration should be stayed until the Petitioner has had an opportunity to adjudicate his fraud-in-the-inducement claims which, if successful, would void the arbitration provision." [The petitioner's] argument, however, is contrary to applicable law. As long as an arbitration clause is broad enough to encompass claims of fraud in the inducement of the contract in which it is found, any claims as to fraud in the inducement of the contract *354 generally, as opposed to the arbitration agreement specifically, are subject to arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350 (11th Cir.1986); Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332 (Ala.1991). Here, the arbitration clause states: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration. . . ." Clearly, [the petitioner's] claims as to fraud in the inducement of the contract "relat[e] to" the contract, and the arbitration clause is therefore broad enough to encompass those claims. [The petitioner] did not allege any claims of fraud in the inducement specific to the arbitration provision itself. Thus, all claims attacking the contract on the basis of fraud, suppression, deceit, etc., are subject to arbitration.'
"669 So.2d at 892-93 (emphasis in original).
". . . .
"The facts of this present case, however, place it within the application of the principles announced in Prima Paint. Hamilton did not assert a claim of fraud in the inducement as to the arbitration clause; rather, Hamilton challenged the IMR customer agreement as having been fraudulently induced. In other words, Hamilton did not contend that the execution of the arbitration provision itself (i.e., apart from the execution of the other provisions of the customer agreement) was induced by fraud.
"To reiterate, when a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court. On the other hand, when a claim of fraud in the inducement is directed toward the entire contract, as in this case, the issue is subject to arbitration. Because Hamilton claimed fraud in the inducement of the customer-agreement contract generally, as opposed to the arbitration clause specifically, Hamilton's claims against IMR are subject to arbitration according to the terms of the customer agreement he signed."
Hamilton, 727 So.2d at 74-78.
Here, the Haymans asserted a claim of fraud in the procurement of the arbitration clause, a claim they knew when they asserted it had no basis in fact.[4] Once the sellers deposed the Haymans on February 1, 2006, and discovered for the first time that the Haymans' claim asserting fraud in the procurement of the arbitration agreement specifically had no basis in fact, they immediately moved the trial court, on February 6, 2006, to compel arbitration pursuant to the arbitration agreement contained in the "Retail Buyer's Guide." Based on this Court's decision in Hamilton, `the sellers had no basis on which to compel arbitration before February 1, 2006, even as to the claims asserting fraud in the inducement of the contract and breach of contract. Therefore, because the sellers promptly moved to compel arbitration after learning that the Haymans' claim of fraud in the procurement of the arbitration agreement had no basis in fact, I cannot conclude that they waived the right to compel arbitration.
*355 Based on the foregoing, I conclude that the sellers did not waive their right to arbitration; therefore, I must respectfully dissent.
SEE and STUART, JJ., concur.
NOTES
[1] The terms of the purchase price were based in part on a down payment of $70,166.81 made by the Haymans. The down payment consisted of $60,166.81 in equity the Haymans received on a trade-in of a recreational vehicle they had purchased in 2003 from Paw Paw's Camper City and $10,000 in cash.
[2] The dissenting opinion does not acknowledge that the case was set for trial without objection from the sellers.
[3] This Court in Jackson also relied on the fact that the discovery expenses incurred by the plaintiffs would not be wasted because the discovery conducted between the parties would be necessary to adjudicate the plaintiffs' nonarbitrable fraud claims.
[4] The Haymans testified in their depositions that the sellers did not make any representations regarding the arbitration agreement and, more importantly, the Haymans stated that they did not read the "Retail Buyer's Order" containing the arbitration provision before they signed it. See Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997).